O’Neall, J.
The three cases of John M’Lure & Co. E. Timmons and Jacob Walker, against the defendant, Alexander Vernon, will be considered together. M’Lure’s case was a writ in trover, accompanied by the affidavit required by the act of 1827, and an order requiring the defendant to produce the chattels (the slaves Tilla and Dave) sued for in satisfaction of the plaintiffs’ judgement, in case they should recover. The two others were writs of capias ad satisfaciendum.
I am satisfied that there is nothing in the first objection urged by the defendant to the hearing of the appeal from the decision of the commissioners of special bail, if an appeal would lie. The defendant’s counsel, in his application to be discharged under the Prison Bounds Act, could not, the moment they obtained the order of discharge, defeat the plaintiffs in their appeal, by denying that they were any longer his attornies. They were as much his attornies in all the subsequent stages through which the cases could be regularly and legally carried, as the plaintiff’s or defendant’s attorney is in an action where a verdict has been obtained and appeal is made.
But I agree entirely with the presiding judge, that there is no appeal from the decision of the commissioners of special bail under the Prison Bounds Act. P. L. 456. The act gives to the parties no right of appeal, and it follow's that whatever error the commissioners of special bail may commit, they cannot he corrected on appeal. The writ of certiorari, it seems to me, might be granted by the Court of General Sessions and Com- *435 inon Pleas, to eorreot their errors in law. See the case of The State v. Senft and Prioleau,* decided here during the last month, for Charleston.
But as the whole case appears to be before us, it may save further litigation to express an opinion on some of the points involved.
There is unquestionably a difference between the powers of the commissioners of special bail, under the 4th and 7th sec-iions of the Prison Bounds Act. The 4th relates to the case of a prisoner confined under mesne process, and, after authorizing the commissioners of special bail to discharge the prisoner upon his assignment of his estate and effects, where no opposition is made to his discharge, it provides, “ but if the plaintiff shall shew cause for disbelieving the prisoner’s oath or affirmation, or shall desire further time for information, the judge, justice, or commissioner of special bail, shall, as the case may be, have power to remand the prisoner, and appoint another day for his or her appearance; and if, on the second day, the plaintiff shall not appear, or shall he unable to prove that the prisoner’s oath or affirmation ought tó he disbelieved, the judge, justice, or commissioner of special bail, after assignment made as aforesaid, in manner above directed, shall discharge the prisoner.” The plain words of this paragraph of the 4th section shew that the commissioner of special bail, where the prisoner is confined under mesne process, must judge in the first place of the cause shewn for disbelieving the prisoner’s oath or affirmation; and in the second place he is to decide whether the plaintiff has made sufficient proof to discredit the prisoner’s oath or affirmation, so as to prevent his discharge. This gives him the right to try the question of fraud or no fraud in the schedule, so far as to judge whether the prisoner’s oath or affirmation ought to be believed or disbelieved, and if he is satisfied there is no reasonable ground to disbelieve it, then to discharge the prisoner ; otherwise to leave him where he found him. Robinson v. Carwile, State Rep. 35.
The 7th section relates to prisoners in execution, and after enumerating several causes which shall deprive such prisoner of the benefit of the act, it provides, “ but wherever a prisoner shall be accused by the plaintiff, or his agent, of fraud, or his having given an undue preference to one creditor to the prejudice of the plaintiff,* or of having made a false return, or of *436 having gone without the prison walls and rules, as the case-may be, it shall.be lawful for the judge ox justice before whom the prisoner is brought, to direct a jury to be empanelled and, sworn, to determine the fact,”
To accuse the prisoner of fraud, &c. would seem,, from the words used, to be enough to require the cause to be submitted to a jury; and were it not that such a construction would be against the general scope of the act, I should be disposed to think that such ought to be the construction. But it would have the effect often to delay and hinder the discharge of the prisoners, without any just cause, by ousting the commissioners of special bail of jurisdiction over the case by making the allegation. To have such an effect, there ought to be some reasonable shewing of the truth of the charge, such as the affidavit of the plaintiff or his agent,, or of one or more witnesses. But whenever the charge of fraud,, or of the existence of any of the other enumerated objections to the prisoner’s discharge, in the paragraph last cited, appear to be made out prima facie, the commissioners of special bail are ousted of jurisdiction. For it will be seen in the paragraph cited, that the commissioners of special bail are dropped, and it speaks of a judge or justice, meaning obviously a judge of the Court ef General Sessions of the Peace and Common Pleas,, or a Justice ef the county Court. These officers, and not a commissioner of special bail, could alone decide, with the assistance of a jury, the objections raised to the prisoner’s discharge under this paragraph of the 7th section- On the writs of ca. sa. there was a reasonable showing of the truth of the charges made against him, and there can therefore be no doubt that under these cases the commissioners of specif bail decided upon the objections to the prisoner’s discharge when they had no jurisdiction or authority to. decide ; and of course their decision cannot prejudice the plaintiffs in execution, in suits upon the- bonds for the bounds in their cases. Carwile v. Robinson, State Rep. 35. Jones & Williams,* sheriff, decided at this term. So too, I think the decision in M’Lure’s case, although made in a matter ef which the commissioners of special bail had jurisdiction, cannot prejudice the plaintiffs in that case in a suit on the Prison Bounds bond. The proceeding is a summary one to advance liberty. The commissioner of special bail does not decide that the schedule is a full and perfect schedule of the prisoner’s estate; he simply decides that the plaintiff has been unable to prove that the prisoner’s oath or affirmation, swearing that it is a schedule of his whole estate, ought to be disbelieved. In such a decision there is nothing to conclude the plaintiff from shewing, in a suit on the bond, that the prisoner’s schedule was false. Indeed the plaintiff, the moment he finds the prisoner has deli *437 vered in a false schedule, may require the sheriff to put the bond for the bounds in suit; and may or may not, as he may choose, resist the prisoner’s enlargement under the act.
Bobo, for the motion.
Thomson and Dawkins, contra.
In M’Lure’s case, I think the commissioners of special bail had, under the Prison Bounds Act, jurisdiction of the prisoner’s application for a discharge ; for the prisoner was confined on civil process, and also on mesne process — notwithstanding it was not, strictly speaking, bail process. But I am equally well satisfied that they ought not to have discharged the prisoner. On looking into the evidence before the commissioners of special bail, it will be seen that he was proved to have been in possession of the negroes in dispute, shortly before he was served with the process by which he was required to find security for their production, in satisfaction of the plaintiffs’ judgement, if they should recover. To permit him to pul them out of his possession, and go to jail and be discharged under the Prison Bounds Act, would defeat the whole object of the act of 1827,. which declares the said chattels “ liable to satisfy the plaintiff’s judgement to the exclusion of other creditors.” Acts of 1827, p. 81. The prisoner, in his schedule, admits that the slaves Tilla and Dave were mortgaged to Adam Cooper, (by which is meant the mortgage to M’Lure & Co. and which is the predicate of the action of trover in which the order for security is made) but states “both of which haw been for some time out of this deponent’s possession.” Gn the trial he struck out these last words, and inserted, “ were sold about the first of April last to Robert Ciymes, and the purchase money paid unto my creditors, to wit: John Fielder, Jas Vernon, sen. Daniel Mullins, John Booker and others.” This was an admission on bis schedule, of a fraud against the rights of the plaintiffs under the act of 1827, and ought to have prevented the prisoner’s discharge. I am therefore perfectly satisfied that the commissioners of special bail erred in discharging the prisoner from any of the cases; but inasmuch as there is no appeal from their decision, the presiding judge was right in refusing to hear the case. The motion to reverse his decision in each of the cases is dismissed.
Johnson and Harper, Js. concurrred.

Ante, 367.

 From the distinction here made between the two sections of the Act, it appears that the Court regarded them as providing for distinct classes of cases, and that therefore they should not be construed entirely together. According to this view, it would seem to follow that “ undue preference,” as a cause for depriving a prisoner of the benefit of the act, relates exclusively to prisoners in execution; for tho 4th section, in relation to prisoners on mesne process, does not enumerate this among the causes of objection to a discharge. In the case of Crenshaw v. Wetsel, (ante 4i8) the defendant was confined on mesne process; but this point was npt raised, and the distinction not adverted to. The amendatory Act of 1833mustbc constru6din reference to the provisions ofthat of 1788, 11,

Ante, 431.